**WOOLEY v. DARNELL-BERRY HORSE AND MULE CO.**

---

(November 29, 1926. Opinion and Decree.)

---

1. **Louisiana Digest—Sales—Par. 240, 243.**

In order to recover in a redhibitory action, the buyer must prove that the vice existed before the sale.

Appeal from Civil District Court, Division "D". Hon. Porter Parker, Judge.

Action by Joseph G. Wooley against the Darnell-Berry Horse and Mule Company.

There was judgment for plaintiff and defendant appealed.

Judgment reversed. ·

J. D. Nix, W. W. Wright, of New Orleans, attorneys for plaintiff, appellee.

Frymire and Ramos, L. Walter Cockfield, of New Orleans, attorneys for defendant, appellant.

WESTERFIELD, J.    Plaintiff sues for $340.00 and defendant reconvenes asking $121.25. From a judgment, as prayed for, in plaintiff's favor, defendant has appealed.

Plaintiff alleges that, on December 6, 1922, he bought two black horses from defendant, a livestock dealer, with the understanding that the horses could be returned if found unsatisfactory for plaintiff's ice delivery business; that the horses did not suit him and that on February 25th they were returned to defendant and exchanged for two other horses, plaintiff agreeing to pay $150.00 additional, because of the alleged better quality of the second pair of horses; that one of the horses received in exchange was represented as lame and not delivered to plaintiff until Saturday, April 14, 1923, and that when delivered on said date the horse "was affected with a redhibitory vice, and the malady became so pregnant that said animal ·was removed on Monday, April 16, 1923, to the Veterinary Hospital at 1233 Dryades Street where the said animal died"; that the treatment of the horse cost plaintiff $52.50 which with the amount paid on the purchase price of the animal

$187.50 (erroneously stated as $287.50) is due plaintiff by defendant.

Defendant denies the presence of any redhibitory vice in the animal sold at the time of delivery, before or since, and avers that the horse was sold and delivered to plaintiff on February 24, 1923, and that, at plaintiff's request, was left in defendants charge for the purpose of having the horse clipped; that on returning the horse to defendant's stable after having it clipped a nail pierced one of its feet or the horse "picked up a nail" and that at plaintiff's suggestion the horse was treated in defendant's stable at an expense of $71.25 for food and veterinary services; that on April 13, 1923, the horse was again delivered to the plaintiff in apparent good health; that there is $50.00 due defendant on the purchase price and in addition he should recover the expense of treating the horse.

The following articles of the Civil Code are pertinent:

Art. 2520. "Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice." .

Art. 2530. "The buyer who institutes the redhibitory action, must prove that the vice existed before the sale was made to him. If the vice has made its appearance within three days immediately following the sale, it is presumed to have existed before the sale."

Art. 2456. "The sale is considered to be perfect between the parties, and the property is of right acquired to the purchaser with regard to the seller, as soon as there exists an agreement for the object and for the price thereof, although the object has not yet been delivered."

The evidence is clearly to the effect that the two horses, one of which is the subject of this suit, were sold and delivered to plaintiff on February 24, 1923, and were simply left with defendant to be clipped. Plaintiff himself testified to this effect.

"He said, 'You want them horses?' I said: 'Yes'. I tried them in my wagon. They worked all right, and I says: 'I will take them.' He said: 'You got to pay $150.00 more for them horses.' Well, I says: 'I can't do no better; I guess I got to take them; you all got my money.' They needed to be clipped and shod, and he said he would get them clipped and shod for me, and I give him the money for it, and so I accepted—he says: 'Come back tomorrow and get the horses.'" (Wooley, Tr. p. 4.)

What killed the horse, is difficult to determine. It does not seem likely that the nail in his foot caused his death, for he apparently recovered from that accident. There is testimony to the effect that after receiving the horse from defendant following his recovery from the nail in his foot, he was injured severely on his side by blows or by kicks from another horse. At least the evidence is that he had the appearance of having been injured in such manner. Whatever may have caused the death of the horse defendant can not be held responsible. There is nothing in the record to indicate that there was anything the matter with the horse at the time of the sale. When he "picked" the nail he was plaintiff's property and whatever consequences might have ensued must be at plaintiff's cost. The horse died nearly ninety days after the sale and so far as the cause of death may be considered as established, it was due to something which happened after the sale.

The judgment appealed from must be reversed and plaintiff's suit dismissed and it is so ordered.

It is further ordered that defendant, Darnell-Berry Horse and Mule Co. do have and recover judgment, in its reconventional demand, in its favor, and against plaintiff, Jos. G. Wooley, in the sum of $121.25 with costs of both courts.